**NOT FOR PUBLICATION** **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTINE MCCARTHY, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil Case No. 10-6559 (FSH) (PS) |
| v. | **OPINION & ORDER** |
| KELNER, PECORARO & KELNER, P.C., *et al.*, | Date: March 12, 2012 |
| Defendants. | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon the Defendants' motion for summary judgment. Plaintiff contends that she was discriminated against on the basis of her disability in violation of the Americans with Disabilities Act ("ADA"), and she also claims wrongful termination, defamation, failure to pay overtime, breach of contract, "hostile work environment," and emotional distress. The Court has reviewed the submissions of the parties and considered the motion on the papers in accordance with Fed. R. Civ. P. 78.

**I.    BACKGROUND**

    **A.  Facts**

Plaintiff Christine McCarthy was employed as a member of the office staff at Kelner, Pecoraro & Kelner ("KPK"), a dental practice that is one of the defendants in this action, from December 2000 until she was terminated on August 12, 2010. She performed clerical work for KPK at their Clark, New Jersey office, including processing insurance, answering phones, and scheduling appointments. (Defs.' Stmt. of Facts ¶¶ 8, 9.) The other defendants in the action are

Dr. Richard Kelner, Dr. Melissa Pecoraro, and Dr. Danielle Kelner—all partners and/or managers in KPK—as well as Terry Lynch, the office manager for KPK.  Plaintiff reported to those individual defendants.  (*Id.* ¶ 10.)

Until around 2007, Plaintiff was apparently content with her employment at KPK. (*Id.* ¶ 18.)  In 2008, she started looking for a new job but could not find one.  (*Id.*)  As the employment relationship deteriorated, the parties were involved in numerous disagreements, none of which are relevant to this decision.  Plaintiff's employment was eventually terminated on August 12, 2010.  (*Id.* ¶ 36.)

Before her termination, in 2006, Plaintiff began to notice some hearing loss.  (*Id.* ¶ 69.) She discussed the hearing loss with Dr. Richard Kelner, whose wife is hearing impaired, and he recommended an audiologist.  (*Id.* ¶ 70.)  Plaintiff was given hearing aids, which "helped dramatically."  (*Id.* ¶¶ 69, 71.)  Sometime later, Plaintiff nevertheless sought a headset device at the office to improve her ability to hear on the office phone, which she described as an "antiquated" system.  (*Id.* ¶ 74.)  Plaintiff also indicated the headset would help relieve "the chronic stress on the muscles in [her] neck."  (*Id.* ¶ 75.)  Plaintiff alleges she first took her request to Lynch, who told her the practice would not pay for a headset (which Plaintiff sometimes calls a handset).  (*Id.*)  On July 29, 2010, some four years after her diagnosis, Plaintiff submitted a request for the device on behalf of herself and another employee to Dr. Richard Kelner.  (*Id.* ¶ 76.)  The next day she e-mailed Dr. Richard Kelner to follow up on the request. (*Id.*)  He wrote back that he would address the issue when he returned to the office, but that he "was sure [it] is most likely ok."  (*Id.*)  He was apparently tending to his wife, who was in the hospital.  (*Id.*)  On August 3, 2010, the day Dr. Kelner returned to the office, Plaintiff renewed her request in a meeting with Dr. Kelner, which she surreptitiously recorded.  (*Id.*)  Dr. Kelner

2

explained his time had been spent "doing stuff with [his] wife," to which Plaintiff replied that he was "always trying to do something." (*Id.*)

Plaintiff was terminated nine days later, on August 12, 2010. (*Id.* ¶ 36.) Her termination followed the events that Dr. Pecoraro described as the "culmination" of complaints from office staff, patients, and other doctors, and an earlier incident where Plaintiff had yelled at the individual Defendants and left the office during the work day. (*Id.* ¶ 42.)

### B. Procedural History

Plaintiff commenced this action by filing a Complaint on November 4, 2010, in the Superior Court of New Jersey, Union County. She subsequently filed an Amended Complaint on December 7, 2010. That Complaint alleged eight causes of action: "wrongful termination" (Count One), "wrongful retaliation" (Count Two), defamation (Count Three), violation of the Americans with Disabilities Act (Count Four), deprivation of "rightful overtime pay"(Count Five), emotional distress (Count Six), breach of implied contract (Count Seven), and "hostile and unbearable work atmosphere" (Count Eight).

On December 16, 2010, the Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441, on the grounds that this Court has original jurisdiction over Plaintiff's Americans with Disabilities Act claim pursuant to 28 U.S.C. § 1331 and pendent jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Defendants then filed their Answer to the Complaint on January 6, 2011, and discovery followed.

Defendants moved for summary judgment in their favor as to all claims on October 14, 2011. On November 3, 2011, ten days after Plaintiff's brief in opposition to summary judgment was due, her counsel filed a letter requesting more time and claiming he had attempted to contact counsel for the defendants. Despite the untimely request and the fact that defendants' counsel

indicated that plaintiff's counsel had not in fact attempted to contact him, the Court granted Plaintiff a four day extension, until November 7. *See* November 3, 2011 Order (docket # 26). Plaintiff's counsel then submitted a letter to the Court on November 8, 2011, in which he stated that he was unable to respond to Defendants' motion because it did not contain a notice of motion, and requesting the Court require Defendants to re-file their motion and reset the deadlines. The Court denied the request on November 9, 2011 because, as defense counsel explained, the notice of motion was in fact filed properly. *See* November 9, 2011 Order (docket # 32). The Court nonetheless granted Plaintiff another brief extension to November 14, 2011.

On November 13, Plaintiff filed a "certification in opposition to the motion for summary judgment," which, in addition to being improperly executed,[1] consisted of 71 paragraphs of argumentation without a single citation to the record. To this certification, Plaintiff attached nearly 1,000 pages of deposition testimony and other documents, with absolutely no references to any of its contents to guide the Court in determining on which of the thousand pages Plaintiff was relying for which point she was making in the argumentative "briefadavit," which is a prohibited method of filing a purported legal brief in this District. Two days later, Plaintiff's counsel filed a letter requesting permission not to file a brief, and requesting oral argument instead. Oral argument is never a substitute for a brief. Defendants filed their reply brief in further support of summary judgment on November 21, 2011.

On January 4, 2012, the Court issued an Order (the "January 4 Order") striking Plaintiff's certification and attachment for complete noncompliance with the requirements of Local Civil Rule 56.1, which requires the opponent of summary judgment to furnish "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or

---

[1] The certification was not signed by the Plaintiff. Instead, Plaintiff's counsel marked "/s" on the signature line before filing the document electronically, which is not appropriate for non-attorneys. *See* L. Civ. R. 5.2, Electronic Case Filing Policies and Procedures at 12(c).

disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." The Court explained that it was "impossible . . . to ascertain which facts are in dispute without compliance" with the rule, and that "requiring the Court to hunt through approximately 1,000 pages of non-compliant materials is not an efficient method to ascertain the facts necessary to decide the motion." January 4 Order (docket # 42). The Court also instructed Plaintiff to submit a brief in support of the opposition, as required by Local Civil Rule 7.1(d). To permit Plaintiff to make her case, the Court granted Plaintiff an unprecedented second chance, and granted an extension until January 9, 2012, which was in fact 77 days from when Plaintiff's opposition was originally due, to file a statement of material facts in compliance with Local Civil Rule 56.1. The Court also instructed Plaintiff's counsel to pay Defendants' costs for filing a second set of reply papers. The Court also warned that if Plaintiff failed to comply with the Order, the Court would deem the facts in Defendants' Rule 56.1 Statement not controverted.

On January 9, 2012, Plaintiff's counsel filed a purported statement of material facts in opposition to the motion for summary judgment. Again, however, Plaintiff's statement simply recited allegations, and failed to include a single citation to the record. Similarly, Plaintiff's brief did not contain any citations to the record.[2] Plaintiff again filed over 1,000 pages of exhibits, despite the unprecedented extensions the Court gave Plaintiff to file a proper statement. As a result, and as the Court duly cautioned counsel in the January 4 Order, the Court struck the attachments to the statement for noncompliance in its order of March 12, 2012 (docket # 48).[3]

---

[2]   Plaintiff's brief was not filed until January 10, 2012, one day after the Court's deadline and 78 days after it was initially due.

[3]   One of those exhibits was a statement from Plaintiff's physician. Plaintiff's counsel requested to submit an expert report from Plaintiff's physician on December 11, 2011, more than five months after the deadline for expert discovery had passed. That request was denied by Magistrate Judge Shwartz as untimely on December 20, 2011. Notwithstanding Judge Shwartz's

5

> Federal Rule of Civil Procedure 56(e) states, in part, that
>
> "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."

In this case, the Court granted Plaintiff a second attempt to provide an appropriate statement of material facts, and explained clearly what was required under Local Civil Rule 56.1 and why it was required. Plaintiff failed to provide any citations to the lengthy record, or otherwise draw the Court's attention to disputed factual issues, which it was her burden to do. *See Avatar Bus. Connection v. Uni-Marts*, No. 04-1866, 2007 U.S. Dist. LEXIS 38775, at *11 n.6 (D.N.J. May 30, 2007) (noting that it is the duty of the opposing party to "draw the Court's attention to precisely those material facts for which a genuine dispute exists by stating the fact and citing to the record of admissible evidence"); *see also Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n. 8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record.") (internal quotation omitted). Because Plaintiff twice failed to comply with the requirements of Local Civil Rule 56.1, the Court will deem facts appearing in the Defendant's Rule 56.1 statement as admitted by the Plaintiff, unless contradicted by the evidence. *See, e.g.*, *Longoria v. New Jersey*, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001); *Stouch v. Twp. of Irvington*, No. 03-6048, 2007 WL 2783338, at *2 n. 1 (D.N.J. July 16, 2008).

---

Order, Plaintiff's Counsel filed the physician's statement and it was also stricken from the record and shall not be used or referred to by Plaintiff in this proceeding as it is not part of the record in this case. Plaintiff's counsel is admonished that ignoring this ruling shall be met with appropriate sanctions, as the Court has now concluded that two courts have told counsel clearly what the rulings are, and he is just refusing to comply with them.

## II.     STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).  All facts and inferences must be construed in the light most favorable to the non-moving party.  *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).  The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *See Anderson*, 477 U.S. at 249.  "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict."  *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production.  *Celotex Corp.*, 477 U.S. at 323.  This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden.  *Id.* at 322-23.  Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of a "genuine issue of material fact" justifying trial.  *Miller*, 843 F.2d at 143; *accord Celotex Corp.*, 477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587 (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative."  *Anderson*, 477 U.S. at 249-50.

### III.   DISCUSSION

#### A.  Plaintiff's ADA Claim

Plaintiff claims that she was discriminated against by Defendants by their failure to accommodate her alleged hearing disability because Defendants did not purchase the telephone headset as she had requested.  Defendants argue that they are entitled to summary judgment because 1) Plaintiff never indicated that her request for a headset was related to her hearing problem, 2) Defendants never indicated that her request would not be granted before she was terminated, 3) Plaintiff failed to follow the complaint procedures for violations of KPK's anti-discrimination policy in the employee handbook, and 4) Plaintiff has not demonstrated that her hearing loss rises to the level of a disability.

The ADA prohibits discrimination by employers against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment."  42 U.S.C. § 12112(a).  It also imposes upon employers the duty to

reasonably accommodate the known disabilities of employees or applicants unless to do so would present an undue hardship for the employer. *See* 42 U.S.C. § 12112(b)(5)(A). In the ADA Amendments Act of 2008, Congress made clear that "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act," 42 U.S.C. § 12102(4)(A), and "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . hearing aids," among other devices, 42 U.S.C. § 12102(4)(E)(i)(I).

On a summary judgment motion in an ADA case, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803-05 (1973). *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996). Accordingly, the Plaintiff bears the initial burden of proof. *Id.* To recover under 12112(b)(5), "the plaintiff must prove '(1)[s]he is a disabled person within the meaning of the ADA; (2)[s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3)[s]he has suffered an otherwise adverse employment decision as a result of discrimination . . . [which] in this context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities.'" *Hohider v. United Parcel Service*, 574 F.3d 169, 187 (3d Cir. 2009) (quoting *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004).

The Court will first address the Defendants' willingness to make reasonable accommodations. The Third Circuit has described the "interactive process" that employees and employers must engage in with respect to reasonable accommodations. *See, e.g.*, *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999). As part of the interactive process, "'both parties have a duty to assist in the search for appropriate accommodation and to act in good faith.'" *Id.* at 312 (quoting *Mengine v. Runyon*, 114 F.3d 415, 419-20 (3d Cir. 1997).

The interactive process begins when the employee gives notice of the disability to the employer and makes a request for accommodation. *Id.* at 313. There are no formal requirements for the employee's request—it need not be in writing, or "invoke the magic words 'reasonable accommodation.'" *Id.* Instead, the Court looks to the content of the employee's request to ensure it "make[s] clear that the employee wants assistance for his or her disability," such that "the employer can be fairly said to know of both the disability and desire for an accommodation." *Id.*

Here, Plaintiff has failed to demonstrate that she made a request for accommodation for her hearing disability. Plaintiff first made an undated request for a headset for the phone system to Lynch, the office manager. (Defs.' Stmt. of Facts ¶ 75.) Plaintiff's description of the request she made to Lynch is ambiguous—Plaintiff said that she wanted the headset "to help [her] hear better" and "also to relieve the chronic stress on the muscles in the neck." (*Id.* ¶ 75.) Given that numerous employees had trouble hearing on the phone system (*id.*), Plaintiff's statement that she wanted the headset to "hear better" would not necessarily indicate to Lynch that Plaintiff's request was for accommodation for her hearing disability. Furthermore, the record indicates that Lynch did not in fact deny Plaintiff's request; instead, she directed Plaintiff to Dr. Richard Kelner. (*Id.* ¶ 75.)

The record reflects two requests Plaintiff made to Dr. Richard Kelner: (1) an e-mail to Dr. Richard Kelner sent on July 29, 2010 (Olitt Cert., Ex. H); and (2) a surreptitious recording[4] of a conversation with Dr. Richard Kelner that Plaintiff made on August 3, 2010 (Olitt Cert., Ex. J). In neither the e-mail nor the transcript of the conversation does Plaintiff identify her hearing disability as the reason for the request. In fact, Plaintiff's e-mail indicates that she is

---

[4] The Court observes that surreptitiously recording conversations is not evidence of the "good faith" participation required by the interactive process.

making the request on behalf of herself and another employee, and there is no indication in the record or elsewhere that the other employee suffered from a hearing disability. (Olitt Cert., Ex. H.) The transcript of the recording is simply devoid of any explanation for why Plaintiff requested the headset. (Olitt Cert., Ex. J.)

While Dr. Richard Kelner likely was aware of Plaintiff's hearing disability given that he had discussed it with her and that she wore hearing aids, the disability was diagnosed four years before Plaintiff requested any headset. (Defs.' Stmt. of Facts ¶ 70.) It is unreasonable to expect Defendants to have understood that Plaintiff's request for a telephone headset pertained to her hearing disability when Plaintiff's request was made after four years of using the telephone system and especially when Plaintiff also made the request on behalf of a coworker with no apparent disability. "Employers cannot assume employees are disabled and need accommodations." *Taylor*, 184 F.3d at 313.

Even assuming *arguendo* Plaintiff did adequately request accommodation, there is no evidence that Defendants' response to Plaintiff's request for the headset did not satisfy the requirements of the ADA. Plaintiff made her request to Dr. Richard Kelner while he was out of the office to tend to his wife, who was hospitalized. (Defs.' Stmt. of Facts ¶ 76.) The record indicates the other partners in the practice were not aware of Plaintiff's request, or even of her difficult using the phones. (*Id.* ¶¶ 78, 79.) When he returned to the office, Plaintiff renewed her request, and Dr. Kelner indicated he would look into it, and explained that his focus was on his wife. (*Id.*) Nine days later, Plaintiff's employment was terminated, mooting her request. While "[a] party that obstructs or delays the interactive process is not acting in good faith," *Taylor*, 184 F.3d at 312, the brief delay in providing the headset does not demonstrate Defendants were not

11

acting in good faith, and the Defendants have demonstrated that Dr. Richard Kelner provided a reasonable explanation for his brief and ultimately inconsequential delay.

Because the Court finds that Plaintiff did not make a request for reasonable accommodations and that she could not demonstrate that Defendants' participation in the interactive process was not in good faith, the Court will not address whether Plaintiff is disabled within the meaning of the statute or whether Plaintiff is otherwise qualified to perform the work.

### B.  Plaintiff's State Law Claims

Plaintiff's remaining claims are predicated on state law, and this Court has no original jurisdiction over those claims.  Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district court may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." The Third Circuit has recognized the authority of district courts to decline to retain jurisdiction after the federal claims have been dismissed.  *See, e.g.*, *Annulli v. Panikkar*, 200 F.3d 189, 202-03 (3d Cir. 1999) (affirming decision of the district court to decline to exercise pendent jurisdiction after granting summary judgment to the defendants on the claims arising under federal law), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000); *Jackson v. Fauver*, 334 F. Supp. 2d 697, 737-38 (D.N.J. 2004).

The Court therefore declines to exercise supplemental jurisdiction over Plaintiff's remaining claims, and will remand the case to state court.

## IV. CONCLUSION & ORDER

For the reasons stated above;

**IT IS** on this 12th day of March, 2012,

**ORDERED** that Defendants' Motion for Summary Judgment (docket # 22) is **GRANTED** in part; and

**IT IS FURTHER ORDERED** that Plaintiff's claim for violation of the Americans with Disabilities Act (Count Four) is **DISMISSED**; and

**IT IS FURTHER ORDERED** that this case is remanded to the Superior Court of New Jersey, Union County, for further proceedings.

/s/ Faith S. Hochberg_____
Hon. Faith S. Hochberg, U.S.D.J.